CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 06, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Casey Blake, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00068 |
| | ) | |
| Steven Majchrzak *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In September 2024, Plaintiff Casey Blake brought an action against Frederick County ("the County"), the Frederick County Fire and Rescue Department ("FCFRD"), Fire Chief Steven Majchrzak, and County Administrator Michael Bollhoefer (Compl. (Dkt. 1)). Blake, an employee of the Fire Department, alleged that Defendants unlawfully retaliated against her at work for sharing inside information about the death of a former Fire Department recruit. (*Id.*) After the court granted in part Defendants' motions to dismiss (Dkt. 25), Blake filed an amended complaint (Am. Compl. (Dkt. 28)). This matter is before the court on Defendants' motion to strike the amended complaint (Defs.' Mot. (Dkt. 29)). For the reasons stated below, the court will grant Defendants' motion and strike the amended complaint.

**I.   Background**

In September 2024, Blake filed her original complaint against the County, FCFRD, Fire Chief Majchrzak, and County Administrator Bollhoefer. (Compl.) Blake asserted a claim for declaratory judgment, a claim of First Amendment retaliation under § 1983, and a claim under

Virginia's whistleblower protection law ("VWPL") against all Defendants. (*Id.* ¶¶ 101–24.) She also brought an intentional infliction of emotional distress ("IIED") claim against Majchrzak and Bollhoefer and a defamation claim against Bollhoefer. (*Id.* ¶¶ 125–42.) Defendants filed separate motions to dismiss (Dkts. 4, 6, 8, 10), on which the court ruled on March 25, 2025 (Dkt. 25). The court dismissed FCFRD as a party from the case with prejudice. (*Id.*) It also dismissed without prejudice Blake's claims for declaratory judgment and retaliation against the County (collectively, the "*Monell* claims"), the VWPL claim against all Defendants, and the IIED claim against all Defendants. (*Id.*)

Blake filed an amended complaint 31 days later, realleging the claims that survived the court's previous ruling, and attempting to revive her *Monell* claims against the County and her VWPL claim against all three remaining Defendants. (Am. Compl. ¶¶ 113–151.) In response, the three remaining Defendants filed a Motion to Strike Plaintiff's Amended Complaint on May 9, 2025. (Defs.' Mot.) Plaintiff filed a response brief on May 22, 2025. (Pl.'s Resp. (Dkt. 30).)

The court assumes familiarity with the facts of the case as initially asserted, which are discussed at length in the court's previous opinion resolving Defendants' motions to dismiss. (Mem. Op. at 1–10 (Dkt. 24).) Blake's amended complaint provides additional factual allegations purporting to support claims that Majchrzak had "final policymaking authority" over the FCFRD, (Am. Compl. ¶¶ 12–16), and that Majchrzak slowly stripped Blake's job responsibilities away from her, (*id.* ¶¶ 71–73, 79, 99, 101–102, 111–112), in retaliation for Blake sharing inside information with a state investigator looking into Ian Strickler's death, (*id.* ¶¶ 63–64, 66–68, 136–40). For the purposes of resolving Defendants' motion to strike, the court

will focus on the new facts in Blake's amended complaint relevant to the realleged claims that the court had previously dismissed. The court will discuss these specific facts in its analysis below.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 15, a plaintiff may amend their complaint "once as a matter of course." Fed. R. Civ. P. 15(a)(1). Where, as here, a defendant files a motion under Rule 12(b), a plaintiff has 21 days after the service of that motion to amend by right. *Id.* After the 21-day window passes, a plaintiff may only amend "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* It should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

An amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (cleaned up); *see also In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (stating that district courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny"). Accordingly, the court will evaluate Blake's amendments under the Rule 12(b)(6) standard.

Rule 12(b)(6) provides that a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  But to gain the benefit of that presumption, the plaintiff must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   Analysis

As an initial matter, the court finds that Blake failed to follow the requirements of Rule 15.  Since Blake did not file her amended complaint within 21 days of service of Defendants' motion to dismiss, she lost her right to amend as a matter of course.  Fed. R. Civ. P. 15(a)(1).  And since she did not obtain the court's leave to amend or Defendants' consent to amend, the court may strike her amended complaint.  *Ofori v. Clarke*, No. 7:18-cv-00587, 2022 WL 2904877, at *3 (W.D. Va. July 22, 2022) ("In circumstances where an amended complaint is filed with no right to amend as a matter of course, no leave granted, and no written consent by the opposing party . . . the court may strike the amended complaint.").  However, even if Blake had complied with Rule 15, the court would strike her amended complaint because her amendments are futile.

Blake's amended complaint reasserts her claims for declaratory judgment (Count I) and First Amendment retaliation under 42 U.S.C. § 1983 (Count II) against the County, Majchrzak, and Bollhoefer; her VWPL claim against the County, Majchrzak, and Bollhoefer, (Count III); and her defamation claim against Bollhoefer (Count IV).  Of those claims, the court previously dismissed without prejudice only Counts I and II as to the County and Count III as to all Defendants.  (Dkt. 25.)  Accordingly, for purposes of resolving this motion, the court will analyze only the claims Blake attempts to revive in her amended complaint: the *Monell* claims against the County and the VWPL claims against the County, Majchrzak, and Bollhoefer.

### A. *Monell* Claims Against Frederick County

As a local government entity, Frederick County cannot be vicariously liable under 42 U.S.C. § 1983 for the injuries caused solely by its employees, Majchrzak and Bollhoefer. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).  Instead, Frederick County can only be sued directly under § 1983 for monetary, declaratory, or injunctive relief when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. To constitute a so-called "*Monell* claim," a local government's official policy, decision, or custom must have been "the moving force of" the alleged violation of federal law. *City of Okla. City v. Tuttle*, 471 U.S. 808, 817–19 (1985); *see also Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 532–33 (4th Cir. 2022) ("*Monell* permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'").

One avenue for a local government to be held liable for a policy or custom is if it arises "through the decisions of a person with final policymaking authority." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Blake asserts *Monell* liability for the County through this avenue. In her original complaint, she claimed that the County is subject to *Monell* liability via Bollhoefer, who she argued was the "final decision maker for FCFRD programs and policies" and was vested with final policymaking authority. (Compl. ¶ 64; Dkt. 13 at 9–10.) The court found that Blake failed to state a claim against the County because she failed to plead sufficient factual allegations that Bollhoefer was aware of and "affirmatively approved" Majchrzak's retaliation and its rationale. (Mem. Op. at 15.)

This time, in her amended complaint, Blake asserts that Majchrzak is the final policymaking authority. (Am. Compl. ¶ 16.) She alleges that "[p]er County ordinance, the Fire Chief supervises and manages the duties and responsibilities of the Fire Department's career personnel." (*Id.* ¶ 13.) The Fire Chief, according to Blake, is also "tasked with formulating, administering, and enforcing department-wide operational and administrative rules, regulations, and policies governing the Fire Department in consultation with advisory bodies, which are managed and administered by the Fire Chief." (*Id.* ¶ 14.)

Whether a particular official has "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986)). Virginia law gives the "*governing body* of any county, city, or town" the authority to establish a fire department and the authority to approve how many "officers and employees may be employed in such fire department." Va. Code Ann. § 27-6.1 (emphasis added). In Frederick County, the Board of Supervisors adopts the county's local ordinances.

Frederick Cnty., Va. Ordinances § 1-2 (2025). The ordinances state that the Fire Chief "shall be appointed by and *report directly to* the County Administrator." *Id.* § 89-3(A) (emphasis added). The ordinances also provide, and Blake admits, that the County Administrator, not the Fire Chief, has the authority to make a "final determination" of any rules or policies that the Fire Chief and his advisory bodies cannot agree upon. *Id.* § 89-5(B); (Am. Compl. ¶ 15.)

The court would "not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126. State and local law appear to give final policymaking authority to the Board of Supervisors and the County Administrator, Bollhoefer, in this case. And "[i]f an official's acts are subject to review or supervision by a municipal policymaker . . . that official does not have final policymaking authority." *Misjuns v. City of Lynchburg*, 139 F.4th 378, 385 (4th Cir. 2025). The final policymaking authority, therefore, lies above Majchrzak. *See Crowley v. Prince George's Cnty.*, 890 F.2d 683, 686 (4th Cir. 1989) (finding that a county police chief did not have final policymaking authority because the county's charter vested the County Council and the County Executive with "the authority to establish and administer a personnel system").

Accordingly, because state and local law do not give Majchrzak final policymaking authority, and his acts appear to be "subject to review or supervision" by Bollhoefer, the court finds that Majchrzak does not have final policymaking authority. *Misjuns*, 139 F.4th at 385. And although policymaking authority can be delegated, *see Pembaur*, 475 U.S. at 483, Blake does not allege that the Board of Supervisors or Bollhoefer delegated this final policymaking authority to Majchrzak. Blake therefore cannot claim *Monell* liability for the County through Majchrzak, and her *Monell* claims against Frederick County are futile.

B. **Virginia's Whistleblower Protection Act Claim (§ 40.1-27.3)**

Blake asserts that the County, Majchrzak, and Bollhoefer retaliated against her in violation of Virginia's whistleblower protection law under Virginia Code § 40.1-27.3. (Am. Compl. ¶¶ 131–41.) Section 40.1-27.3 provides, in part, that:

> An employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee:
>
> 1. Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official; . . . or
>
> 5. Provides information to or testifies before any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation.

Va. Code Ann. § 40.1-27.3(A).

To state a claim under the statute, Blake must allege facts sufficient to show that (1) she or someone acting on her behalf made a good faith report or provided information or testimony of a federal or state law violation to a qualifying entity, (2) she was discriminated or retaliated against by her employer, and (3) her report, information, or testimony was the but for cause of the discrimination or retaliation. *See Workman v. LHC Grp., Inc.*, No. 1:23-cv-00048, 2024 WL 3572305, at *3 (W.D. Va. July 29, 2024); *Moore v. Copper River Shared Servs., LLC*, No. CL-2023-9565, 2024 WL 366099, at *9 (Va. Cir. Ct. Jan. 30, 2024).

The court found that Blake's original complaint "failed to allege facts sufficient to establish that she or her agent made a good faith report to a qualifying entity." (Mem. Op. at 25–26.) Her claim therefore failed on the first prong. The court explained that Blake did not allege that she reported anything to the Virginia Occupational Safety and Health Program

("VOSH") investigator, and that writing the anonymous letter to the Strickler family with the *intention* that they turn it over to the investigator "does not transform the Strickler family into someone 'acting on behalf' of Blake." (*Id.* at 25.) Because the court dismissed this claim based on Blake's failure to allege facts sufficient to establish the first prong, the court did not analyze the remaining prongs of the statute.

In her amended complaint, Blake now adds factual allegations of her communications and cooperation with the VOSH investigator. Blake alleges that she met with the VOSH investigator for "several hours" in "early September 2023," gave him "key information . . . that would facilitate VOSH's investigation," and "periodically communicated" with him after the initial meeting to "facilitate a better understanding" of the events surrounding Ian Strickler's death and the Fire Department's involvement and response. (Am. Compl. ¶¶ 63, 64, 67.) While these new facts may be enough to satisfy the first prong—that Blake made a good faith report to a qualified entity—Blake must also satisfy the third prong: that the report was the but-for cause of the retaliation she faced.[1]

After arguing in her initial complaint that Majchrzak retaliated against her because she authored the anonymous letter to the Strickler family, Blake now argues in her amended complaint that Majchrzak retaliated against her because he suspected she was providing more specific information to the VOSH investigator. (*See, e.g.*, Am. Compl. ¶ 140.) She does not sufficiently allege, though, that her communications with VOSH were the but-for cause of Majchrzak's retaliation at work.

---

[1] In their brief, Defendants only dispute the third element of the § 40.1-27.3(A) analysis and do not dispute that Blake has sufficiently alleged that she was retaliated against under § 40.1-27.3(A). (*See* Defs.' Mot. at 5–6.) Therefore, the court does not analyze the second prong of the § 40.1-27.3(A).

- 9 -

The United States Court of Appeals for Fourth Circuit has held that a plaintiff in a workplace retaliation claim can demonstrate causation by showing (1) "that the adverse act bears sufficient temporal proximity to the protected activity," (2) "the existence of facts that suggest that the adverse action occurred because of the protected activity," or (3) "a combination of the two." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–219 (4th Cir. 2022) (cleaned up); *see also Porter v. Blue Ridge Bankshares, Inc.*, No. 3:24-cv-00909, 2025 WL 2025356, at *3 (E.D. Va. July 18, 2025) (applying this standard to a Va. Code § 40.1-27.3 claim). Separately, Blake must also "assert facts that allow the court to reasonably infer" that Majchrzak "was aware of the protected activity." *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 552 (W.D. Va. 2023); *see also Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) ("[T]he plaintiff must show that a relevant decisionmaker was actually aware of the protected activity before making their decision."); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021) ("In [the Fourth Circuit], we have consistently required proof of a decisionmaker's knowledge of protected activity to support a . . . retaliation claim."); *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case."). It follows, then, if Majchrzak was unaware of the claimed protected activity, Blake "cannot establish the necessary causal connection" between her protected activity and his retaliation at work. *See Roberts*, 998 F.3d at 124 (cleaned up).

Here, Blake must show either temporal proximity between her report to VOSH and the commencement of the retaliation she faced at work, facts that suggest Defendants

- 10 -

retaliated against her because of her report to VOSH, or a combination of the two. Additionally, Blake must also allege that Majchrzak had knowledge of the protected activity. *Id.* at 124–25.

In her amended complaint, Blake alleges that she first met with the VOSH investigator in "early September 2023." (Am. Compl. ¶ 63.) She then alleges that the "department-wide retaliation" against her began on September 18, 2023. (*Id.* ¶ 77.) At this stage, the court accepts the amended complaint's allegations as true and draws all reasonable inferences in Blake's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018). The court assumes that Blake intends to allege that the meeting between Blake and the VOSH investigator took place at some point in September before the retaliation began on September 18. If so, the temporal proximity of 17 days or less between her report to VOSH and the initiation of retaliation by Majchrzak may be sufficient to satisfy that element of causation. *See Barnhill*, 138 F.4th at 132 ("While there is not a bright-line rule instructing when temporal proximity is sufficient to establish causation, without other evidence of causation, the gap between the protected activity and the adverse employment action can generally be no longer than two months.").

Blake's amended complaint, however, fails to sufficiently allege that Majchrzak was aware of her report to VOSH when the retaliation began. Majchrzak's knowledge of Blake's protected activity is "essential" to her retaliation claim. *Wood*, 661 F. Supp. 3d at 552; *see also Barnhill*, 138 F.4th at 132 (indicating that whether the decisionmaker had knowledge of the protected activity is a separate inquiry than whether plaintiff alleged sufficient temporal proximity). But Blake only offers conclusory and speculative allegations relating to

Majchrzak's knowledge of her meeting with VOSH. She alleges that Majchrzak "began to suspect that someone was feeding VOSH information" after "questions began to spiral from the Fire Department's senior leadership regarding how VOSH could point to key sources of information and conduct depositions with key personnel after previously indicating the investigation was over." (Am. Compl. ¶ 68.) She claims that Majchrzak learned about the anonymous letter on September 11, 2023, and that he "deduced that [Blake] was also a VOSH whistleblower" after "deducing that [Blake] had drafted the anonymous letter." (*Id.* ¶¶ 69, 70, 140.) She relies on those allegations alone to argue that Majchrzak retaliated against her because she met with and assisted the VOSH investigator. (*See id.* ¶ 140.) She does not allege that she or anyone else ever told Majchrzak that she talked to the VOSH investigator, or that Majchrzak—or anyone in the Fire Department—ever stated that they knew or suspected that Blake had met with the VOSH investigator with information beyond the anonymous letter. These omissions are especially conspicuous given Blake's assertions about Majchrzak's alleged knowledge of her authorship of the *letter*. For example, according to Blake, Majchrzak told Alice Strickler that "he bet it was Casey Blake who wrote the letter." (*Id.* ¶ 70.)

Blake alleges "[u]pon information and belief" that Majchrzak knew about her interactions with VOSH but does not provide any further factual support as to how she knew or heard about Majchrzak's knowledge of her protected activity. (*Id.* ¶ 71.) "Pleading on information and belief alone is not enough to raise allegations beyond a speculative level." *Mao v. Global Trust Mgt.*, No. 4:21-cv-00065, 2022 WL 989012, at *12 (E.D. Va. Mar. 31, 2022). Without more, the court does not have enough to infer whether or how Majchrzak knew about Blake's protected activity—meeting with the VOSH investigator—before he began his alleged

retaliation. Accordingly, the court finds that Blake's amendments to her Virginia whistleblower claim are futile.

## IV.    Conclusion

Since Blake's amendments to her previously dismissed claims are futile, the court will grant Defendants' motion and strike Plaintiff's amended complaint.

An appropriate Order will issue.

**ENTERED** this <u>6th</u> day of November, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE